# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **HENRY BADIA, ALVIN BRANCH, JAMIE DELCID, JOSE MUNOZ, MIGUEL PUCA, GEORGE RODRIGUEZ, and WALTER VELASQUEZ, on behalf of themselves and all others similarly situated,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**HOMEDELIVERYLINK, INC. and MACY'S INC.,**<br><br>**Defendants.** | Civ. No. 2:12-6920 (WJM) (Lead Case)<br><br><br>**OPINION** |
| **HENRY BADIA, ALVIN BRANCH, JAMIE DELCID, JOSE MUNOZ, MIGUEL PUCA, GEORGE RODRIGUEZ, and WALTER VELASQUEZ, on behalf of themselves and all others similarly situated,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**HOMEDELIVERYLINK, INC. and MACY'S INC.,**<br><br>**Defendants.** | Civ. No. 2:12-cv-07097 (*Consolidated*) |

**WILLIAM J. MARTINI, U.S.D.J.:**

In these consolidated actions filed on behalf of themselves and others similarly situated, Plaintiffs allege that Defendants misclassified them as independent contractors when they were in fact employees. They further contend that due to this misclassification, Defendants deducted from their wages and failed to pay them overtime in violation of state wage and hour laws. After approximately three years of litigation and mediation, Plaintiffs and Defendants reached a proposed settlement (the "Settlement"), which this Court preliminarily approved on June 2, 2015. Plaintiffs now move for this Court to approve the Settlement and grant Plaintiffs' motion for attorneys' fees. The Court reviewed the parties' submissions and held a Fairness Hearing on September 10, 2015. For the reasons set forth below, the Settlement is **APPROVED** and Plaintiffs' motion for attorneys' fees is **GRANTED**.

## I.    BACKGROUND

In 2012, Plaintiffs filed their respective actions in New Jersey state court. *See* ECF No. 1;[1] *Echavarria v. Macy's East, Inc. & HomeDeliveryLink, Inc., et al.*, Civil Action No. 2:12-cv-07097-SRC-CLW (D.N.J.). Both cases were removed to federal court and eventually consolidated. *See* ECF No. 21. The named Plaintiffs in this action are individuals who performed delivery services for Defendants from an Edison, New Jersey location. *See* ECF No. 1. They contend that Defendants inappropriately classified them as contractors. As a result, Plaintiffs allege, Defendants improperly deducted from Plaintiffs' wages and failed to pay them overtime in violation of the New Jersey Wage Payment Law, the New Jersey Wage and Hour Law, and the common law. ECF No. 1. Defendants have, at all times, denied Plaintiffs' allegations. ECF Nos. 6 and 7.

The parties engaged in extensive discovery, which included written discovery[2] and the taking of nine depositions. Plaintiffs filed motions for class certification on January 10, 2014. ECF Nos. 51-52. After additional discovery took place, on March 31, 2014, Defendants filed separate motions in opposition to the motions for class certification. ECF Nos. 60-61. On May 5, 2014, Plaintiffs' filed their reply in support of class certification. ECF No. 65. Additionally, the parties submitted supplemental authority in support of their respective positions. ECF Nos. 75, 80, 81, and 84.

After attending a full-day mediation with a nationally renowned employment mediator, the parties reached a tentative settlement of $2,800,000. On April 15, 2015, Plaintiffs moved for preliminarily approval of the Settlement, which this Court granted

---

[1] Unless otherwise noted, all docket citations refer to *Badia, et al. v. HomeDeliveryLink, Inc., et al.*

[2] The parties report that Defendants produced approximately 14,000 documents. ECF No. 98.

on June 2, 2015.  In doing so, the Court certified the following class for settlement
purposes:

> Individuals who worked at any time from August 30, 2006 to
> the date of this Order as (1) a Contractor (an individual who
> executed a *Lease for Services of Owner-Operator*
> *(Independent Contractor) or Independent Contractor*
> *Agreement* contract with Home Delivery Link, either in their
> individual capacity or through a personal corporate entity, to
> provided delivery services from an Edison, New Jersey
> location); (2) a Second Driver (an individual a Contractor(s)
> retained to provide driving services, who was qualified by
> Home Delivery Link to drive pursuant to applicable law, and
> who provided driving services from an Edison, New Jersey
> location); or (3) a Helper (an individual who provided
> delivery services for a Contractor(s) from an Edison, New
> Jersey location).

ECF No. 89 at ¶ 5.

Without taking into account attorneys' fees or incentive payments, shares of the
Settlement payment are to be distributed to those individuals (hereinafter, "Class
Members") as follows:  Contractors will receive a pro rata share based on the number of
days worked ("Settlement Days"), which will then be subject to a multiplier based on
how many deductions were taken from their paychecks.  Contractors who experienced
greater deductions will benefit from higher multipliers.  ECF No. 87-1.  Second Drivers
and Helpers will receive credit for 1/8 a day for each Settlement Day.  *Id.*  Contractors
are the only ones to benefit from multipliers because they are the only ones who were
subjected to Defendants' deduction practices.  *See id.*  Because the settlement is non-
reversionary, any unclaimed shares will be redistributed proportionally to Class Members
that have submitted valid claim forms.  ECF No. 95-1, 95-3.  Uncashed settlement checks
will be paid to the *cy pres* beneficiary, New Jersey Legal Services.  ECF No. 98.

Using corporate records, Defendant HomeDeliveryLink ("HDL") has provided
Class Counsel with contact information for Class Members.  ECF No. 95-1 at 5.  Class
Counsel has used that information to send court-approved notice and claim forms to
Contractors, Second Drivers, and Helpers who appeared in HDL's corporate records.  *Id.*[3]
Class Counsel also published notice of the Settlement in English and Spanish New Jersey
newspapers.  *Id.*  As of August 2015, 332 Class Members had filed claims, 178 of which
were from Contractors.  As of August 2015, claimants have claimed approximately 76%

---

[3] Additionally, Class Counsel asked Contractors to reach out to Second Drivers and Helpers and
request that they reach out to Class Counsel.  *See* ECF No. 87-1.

of the available Settlement. *Id.* As of September 18, 2015, the Court has not received any objections to the settlement and no Class Members have opted out. ECF No. 98 at ¶ 16.

The Court appointed Harold Lichten of Lichten & Liss-Riorden, P.C., Anthony L. Marchetti, Jr. of Machetti Law Firm, P.C. and Ravi Sattiraju of The Sattiraju Law Firm, P.C. as Class Counsel in this matter. ECF No. 89. The parties have agreed that Class Counsel is to receive one-third of the Settlement in attorneys' fees, which amounts to $933,333. ECF No. 96. Also paid out of the Settlement Fund are incentive payments to class representatives totaling $97,000. ECF No. 95-3.

On September 10, 2015, the Court held a Fairness Hearing to determine whether the proposed Settlement was fair, reasonable, and adequate, and whether the requested attorneys' fees were reasonable. Prior to the hearing, Plaintiffs had fully briefed and supported their positions with extensive affidavits and exhibits. Counsel to Defendants also indicated their support of the proposed settlement. *See* ECF No. 97.

## II.   **DISCUSSION**

In order to approve a class action settlement, a court must find that: (A) class certification is appropriate; (B) the settlement is fair, reasonable, and adequate; and (C) the request for attorneys' fees is reasonable. *See Krell v. Prudential Ins. Co. of Am. ("In re Prudential")*, 148 F.3d 283 (3d Cir. 1998). Each issue will be addressed in turn.

### A.   **CLASS CERTIFICATION**

Before certifying a class for settlement, a court must find that the proposed class satisfies the requirements of Rule 23. *See Amchem Prods. Inc. v. Windsor* ("*Amchem*"), 117 S. Ct. 2231, 2248 (1997); *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.* ("*G.M. Trucks*"), 55 F.3d 768, 799 (3d Cir. 1995). Here, the Court must find that the Class meets the class certification requirements set forth in Rule 23(a) and Rule 23(b)(3). For the reasons set forth below, the Court finds that the proposed Class satisfies the requirements of Rule 23(a) and Rule 23(b)(3).[4]

#### a.   **Rule 23(a) Requirements**

In order to be certified, a class must satisfy the four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a).

---

[4] In its June 2, 2015 order, the Court certified the class for settlement purposes only. In this opinion, the Court will provide reasons for why it believes certification is appropriate. *Amchem*, 117 S. Ct. at 2248.

### 1. Numerosity.

Rule 23(a)(1) requires that the class be so numerous that "joinder of all class members is impracticable." Fed. R. Civ. P. 23(a)(1). In this case, the numerosity requirement is satisfied, as the proposed class includes hundreds of individuals.

### 2. Commonality.

The commonality prong of Rule 23(a) asks whether "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Even a single [common] question" satisfies this requirement. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011). In this case, Class Members share numerous questions capable of classwide resolution, including whether Defendants improperly classified Class Members as independent contractors, and whether Defendants failed to pay Class Members overtime in violation of New Jersey wage and hour laws. Because the answer to any one of these questions would meaningfully advance the litigation, Rule 23(a)(2)'s commonality requirement is satisfied. *See Wal-Mart*, 131 S. Ct. at 2551, 2556.

### 3. Typicality.

Rule 23(a)(3) requires that "the claims . . . of the representative parties [be] typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). Here, the claims of the named Plaintiffs are typical: (1) the named Plaintiffs' claims, like those of all Class Members, arise out of providing delivery services to Defendants; (2) the named Plaintiffs' claims, like those of all Class Members, arise out of the allegation that Defendants improperly classified them as independent contractors; and (3) Plaintiffs allege that they, along with all other Class Members, were not paid in accordance with New Jersey's wage and hour laws.

### 4. Adequacy.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Rule consists of two separate inquiries designed to protect the interests of absentee class members: First, the adequacy of representation inquiry "tests the qualifications of the counsel to represent the class." *G.M. Trucks*, 55 F.3d at 800. Second, it "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 117 S. Ct. at 2250. Both of those prongs are satisfied here.

With respect to the first prong, the Court finds that Class Counsel has extensive experience and expertise prosecuting complex class actions, particularly class actions that arise in the field of employment law. The second prong is satisfied because the named Plaintiffs and Class Members share an identical interest in establishing Defendants' liability. Indeed, both groups possess the same wage and hour claims that are grounded in the same theory—namely, that they were misclassified as independent contractors. Therefore, the adequacy requirement is satisfied.

### b.  Rule 23(b) Requirements

If the Rule 23(a) criteria are satisfied, the Court must also find that the class fits within one of the three categories of class actions set forth in Rule 23(b).  Plaintiffs in this case seek to certify the Class under Rule 23(b)(3).  Before certifying a class under Rule 23(b)(3), a court must determine that (1) common questions of law or fact predominate, and (2) the class action mechanism is the superior method for adjudicating the case.  Fed. R. Civ. P. 23(a)(1).  Courts commonly certify class actions for the purposes of settlement under Rule 23(b)(3).  *See Amchem*, 117 S. Ct. at 2247 (1997) (noting that "among current applications of Rule 23(b)(3), the 'settlement only' class has become a stock device [and] all Federal Circuits recognize the utility of Rule 23(b)(3) settlement classes.").[5]

### 1.  Predominance.

The same common questions relevant to the Rule 23(a)(2) analysis predominate over any individual inquiries that might be relevant. This includes, most importantly, the questions of: (1) whether Defendants misclassified Plaintiffs and Class Members as independent contractors; and (2) whether as a result of their misclassification, Plaintiffs and Class Members were not paid in accordance with New Jersey's wage and hour laws.

### 2.  Superiority.

 A class action is superior to other available methods for the fair and efficient adjudication of this litigation within the meaning of Rule 23(b)(3).  First, the claims of each individual Class Member are *de minimis* when compared to the cost of filing an individual action against Defendants.  Consequently, in the absence of this class action, most individuals would be unable to assert any claims against Defendants whatsoever.  Moreover, in light of the common issues discussed above, the resolution of these allegations in one action represents an efficient use of judicial resources that results in a single, binding outcome on all Class Members.

### c.  Conclusion

For the reasons stated above, the Court finds that the certification of the class for settlement purposes only is appropriate.

## B.  THE FAIRNESS OF THE PROPOSED SETTLEMENT

A class action settlement cannot be approved without a court determination that the settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); *see also In re Prudential*, 148 F.3d at 316.  To determine whether a settlement is fair, reasonable, and adequate, courts in this circuit address the nine factors set forth in *Girsh v. Jepson* ("*Girsh*"), 521 F.2d 153 (3d Cir. 1975).  Additionally, courts must conclude that notice

---

[5] With respect to the second prong of the Rule 23(b) inquiry in the context of a settlement-only class certification, "a district court need not inquire whether the case, if tried, would present intractable management problems...." *Id*. at 2248.

was adequate under Federal Rules of Civil Procedure 23(c)(2) and 23(e). For the reasons explained below, both of those requirements have been met here.

### a. The *Girsh* Factors

The Third Circuit's decision in *Girsh* sets forth nine factors to be considered by courts when evaluating the fairness of a proposed settlement. *See Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975). Those factors are:

> (1) the complexity and duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action [through trial]; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation.

*Girsh*, 521 F.2d at 157. The Court will now address each factor.

### 1. The complexity and duration of the litigation.

The first factor "captures the probable costs, in both time and money, of continued litigation." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535-36 (3d Cir. 2004) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 233 (3d Cir. 2001)). The primary question in this litigation is whether Defendants misclassified certain individuals as independent contractors. Questions of that sort are highly complicated, turn on a multitude of facts, present complicated legal questions, and can produce conflicting outcomes. Accordingly, continued litigation would likely have required "additional discovery, extensive pretrial motions addressing complex factual and legal questions, and ultimately a complicated, lengthy trial." *Id.* at 536. Moreover, any appeals and post-trial motions would have the effect of prolonging the litigation and reducing the value of any class recovery. *Id.* Therefore, the first factor weighs in favor of approving the Settlement.

### 2. The reaction of the class to the settlement.

The second *Girsh* factor attempts to gauge whether members of the class support the settlement. Here, no Class Members objected to the Settlement, nor have any opted out. While not dispositive, this factor strongly favors approval. *Cf. Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (29 objectors out of 281 class members "strongly favors settlement").

### 3.  The stage of the proceedings and amount of discovery completed.

Under the third *Girsh* factor, the Court assess whether the parties had an "adequate appreciation of the merits of the case before negotiating."  *G.M. Trucks*, 55 F.3d at 813. In line with that assessment, there should be an inquiry into the type and amount of discovery the parties have undertaken. *In re Prudential*, 148 F.3d at 319.  Here, the parties engaged in extensive discovery: the parties collectively conducted nine depositions, and Defendants produced over 14,000 documents.  *Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581, 588 (3d Cir.1999) ("Post-discovery settlements are more likely to reflect the true value of the claim and be fair.")  Therefore, the parties approached settlement with a significant grasp of the facts underlying the issues at stake.  The third *Girsh* factor also weighs in favor of settlement.

### 4.  The risks of establishing liability and damages.

Under the fourth and fifth *Girsh* factors, a court will survey the possible risks of (1) establishing liability, and (2) the risks of establishing damages.  *Girsh*, 521 F.2d at 157.  The inquiry acknowledges that "the risks surrounding a trial on the merits are always considerable…." *Weiss*, 899 F. Supp. at 1301.  This case is no exception.  The parties note that two federal district court decisions found delivery drivers to be independent contractors under New Jersey wage laws.   *See In re FedEx Ground Package Sys., Inc., Employment Practices Litig.*, 758 F. Supp. 2d 638, 701 (N.D. Ind. 2010); *Hargrove v. Sleepy's LLC*, 2012 WL 1067729, at *5 (D.N.J. Mar. 29, 2012). While the facts and circumstances of those cases may have been different than what is presented here, the decisions are nonetheless indicative of the uncertainty Plaintiffs would face in establishing liability.  Moreover, Defense counsel has indicated their intention of raising a preemption defense to Plaintiffs' claims.  And even if Plaintiffs could establish liability, they would nonetheless face significant obstacles in establishing the amount owed in damages.  For example, Plaintiffs would have to prove that they worked a certain amount of hours to establish entitlement to overtime pay.  Similarly, they would have to prove the damages linked to improper deductions in order to recover on other claims.  The Court therefore concludes that the fourth *Girsh* factor weighs in favor of approving the Settlement.

### 5.  The risks of maintaining the class action through trial.

Under Rule 23, a district court may decertify or modify a class at any time during the litigation if it proves to be unmanageable.  *Prudential*, 148 F.3d at 321.  Therefore, there is a risk that the case might eventually be decertified, even if class certification were granted.  Consequently, to the extent this factor is relevant, it weighs in favor of settlement.  *See In re Prudential*, 148 F.3d at 321 (noting that, after *Amchem*, the manageability inquiry in settlement-only class actions may not be significant).

### 6.   The ability of the defendants to withstand a greater judgment.

Defendants are large entities with ample resources.  In cases like this, where the defendant's ability to pay greatly exceeds the potential liability, and was not a factor in settlement negotiations, the factor is neutral.  *See In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*, 269 F.R.D. 468, 489 (E.D. Pa. 2010) ("[B]ecause ability to pay was not an issue in the settlement negotiations, this factor is neutral"); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004) ("[The] fact that [Defendant] could afford to pay more does not mean that it is obligated to pay any more than what the . . . class members are entitled to under the theories of liability that existed at the time the settlement was reached").  Moreover, as explained in greater detail below, Class Members are recovering good value on the Settlement, especially after one considers the nature of their claims and the risks they would face in proceeding with the litigation.  *See id.*

### 7.   The range of reasonableness of the settlement in light of the best possible recovery and the attendant risks of litigation.

The last two *Girsh* factors ask whether a settlement is reasonable in light of the best possible recovery and the risks the parties would face if the case went to trial. When assessing the reasonableness of a proposed settlement that involves monetary relief, courts compare "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing . . . with the amount of the proposed settlement."  *G.M. Trucks*, 55 F.3d at 806.  Using that framework, the Court concludes that the monetary recovery under the Settlement is reasonable.  The Settlement provides an average payout of $11,137 to Contractors and $1,500 to Second Drivers and Helpers.  ECF No. 98 at ¶42.  As noted earlier, Defendants plan to vigorously assert a number of theories which they believe preclude a finding of liability.  Therefore, Plaintiffs would undoubtedly face risks in moving forward with the litigation.  After considering the average payouts under the Settlement, as well as the attendant risks of litigation, the Court concludes that the Settlement is reasonable.[6]

### 8.   Conclusion

For the reasons explained above, the *Girsh* factors militate in favor of approving the Settlement.

### b.   Adequacy of Class Notice

The Court must now determine whether class notice was adequate.  Rule 23 of the Federal Rules of Civil Procedure contains two distinct notice provisions.  Rule 23(c)(2) requires notice be given to all potential members of a Rule 23(b)(3) class informing them

---

[6] It is also worth noting that the parties reached the settlement amount after meeting with a nationally renowned mediator.

of the existence of the class action, the requirements for opting out of the class and entering an appearance with the court, and the applicability of any final judgment to all members who do not opt out of the class.  Fed. R. Civ. P. 23(c)(2).  Rule 23(e) requires that all members of the class be notified of the terms of any proposed settlement.  Fed. R. Civ. P. 23(e).  *See also In re Prudential*, 148 F.3d at 327 (Rule 23(e) notice is designed to summarize the litigation and the settlement and to inform class members of the right to inspect the settlement materials and other documents filed in the litigation).

Both notice provisions have been complied with here.  First, Class Counsel has sent court-approved notice and claim forms to Contractors, Second Drivers, and Helpers who appeared in HDL's corporate records, while also publishing notice of the settlement in English and Spanish New Jersey newspapers.  *Zimmer Paper Prod. Inc., v. Berger & Montague, P.C.*, 758 F.2d 86, 90 (3d Cir. 1985) ("It is well settled that in the usual situation first-class mail and publication in the press fully satisfy the notice requirements of both Fed. R. Civ. P. 23 and the due process clause."  *See also, In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 527 (D.N.J. 1997) (actual notice by mail and published notice was "ideal").  Moreover, the Court finds that Class Counsel presented all of the pertinent information regarding the Settlement and the litigation.  Therefore, class notice was adequate under Rule 23(c)(2) and Rule 23(e).

### c. Conclusion

For the forgoing reasons, the Court finds that the Settlement is fair, reasonable, and adequate.  The Settlement is approved.

## C. ATTORNEYS' FEES AND CLASS REPRESENTATIVE INCENTIVE PAYMENTS

Class counsel has submitted an uncontested motion for an award of attorneys' fees and costs totaling $933,333, plus incentive payments to each Class Representative.   The fees are to be paid out of the Class Settlement Fund.  For the reasons explained below, the Court finds the attorneys' fees and incentive payments to be reasonable.

A thorough judicial review of fee applications is required in all class action settlements. *G.M. Trucks*, 55 F.3d at 819.  Under both New Jersey and Third Circuit precedent, a court may exercise its discretion to award attorneys' fees by applying either (1) the lodestar/multiplier method, or (2) the percentage-of-the-fund method.  *See In re AT&T*, 455 F.3d at 164; *G.M. Trucks*, 55 F.3d at 820.  The percentage-of-recovery method is generally favored in cases like this where there is a common settlement fund. *See In re Prudential*, 148 F.3d at 333; *G.M. Trucks*, 55 F.3d at 821.  Here, Class Counsel proposes a percentage-of-recovery of 33%.  Regardless of the method used, the fee must be fair and reasonable.  *See In re AT&T Corp. Sec. Litig.*, No. 00-5364, 2005 U.S. Dist. LEXIS 46144, at *29 (D.N.J. Apr. 22, 2005), *aff'd*, 455 F.3d 160 (3d Cir. 2006).

### a. Class Counsel's Fee Request Is Appropriate Under the *Gunter* Factors

As part of its assessment of the proposed fees, the Court has engaged in a "*Gunter* Factor" analysis.  *See Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n. 1 (3d Cir. 2000).  Under that analysis, the Court is to consider several factors when determining whether a requested fee is appropriate, including the following:

> (1)The size of the fund and number of persons benefitted; (2) the presence or absence of substantial objections by class members to the fee amount; (3) the skill and efficiency of counsel; (4) the complexity and duration of the action; (5) the risk of nonpayment; (6) the amount of time that counsel spent on the case; and (7) awards in similar cases.

*Id.*  With respect to the first factor, the Court does not believe that the settlement amount in this case – $2.8 million – is large enough to warrant a reduction in the amount of fees requested by Class Counsel.  *Cf. In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 737 n. 19 (3d Cir. 2001) (settlements exceeding $100,000,000 are to be considered very large); *In re Genta Sec. Litig.*, No. 04-2123, 2008 WL 2229843, at *9 (D.N.J. May 28, 2008) (settlement of $18 not large enough to require deviation from requested fee award).  Second, there have been no objections to the fee amount.  Third, Class Counsel, notably Messrs. Lichten and Marchetti, are accomplished attorneys with considerable experience in wage and hour cases like this.  Moreover, Class Counsel efficiently moved this case forward to resolution, despite the matter being subject to various motions, extensive discovery, and complicated legal and factual issues.  Fourth, this litigation has been a complex and lengthy affair lasting over three years.  Plaintiffs were required to, among other things, fend off indemnification claims, obtain extensive discovery, file motions in support of class certification, continually digest and respond to arguments made by Defendants, and engage in mediation.  Fifth, because Plaintiffs litigated this case purely on a contingency basis, the risk of nonpayment was high.  *See In re Datatec Sys., Inc. Sec. Litig.*, No. 04-525, 2007 WL 4225828, at *7 (D.N.J. Nov. 28, 2007).  Sixth, Class Counsel spent a considerable amount of time litigating this case, 1,370 hours to be exact. *See* ECF Nos. 96-2, 96-3, 96-4.  Moreover, in light of the duration and complexity of the litigation, the fact that Class Counsel expended such a considerable amount of time is unsurprising.  Seventh, in misclassification cases like this, Courts regularly approve a 33% fee request.  *See, e.g., Scovil v. FedEx Ground Package Sys., Inc.*, 2014 WL 1057079, at *5 (D. Me. Mar. 14, 2014).  Therefore, the *Gunter* Factors weigh in favor of awarding Class Counsel its requested fee amount.

### 1. Lodestar Crosscheck.

The requested 33% is also reasonable when one considers what Class Counsel would recover under the lodestar method.  *See In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005) ("it is 'sensible' for district courts to cross-check' the percentage of fee awards against the 'lodestar' method") (citations and quotations omitted).  The

lodestar method multiplies the hours reasonably worked on a client's case by a reasonable hourly billing rate for such services. *Id*. at 305. Here, a lodestar analysis shows that if Class Counsel were paid by the hour, they would have received $588,095.[7] *See* Decls. Of Harold L. Lichten, Anthony L. Marchetti, Jr. and Ravi Sattiraju (ECF No. 96-2,96-3,96-4). Consequently, the 33% award represents a multiplier of less than 1.59 of the lodestar amount. After considering the complexity and length of this case, along with the fact that courts in this circuit have approved fee requests where the multiplier was much higher, this Court finds that Class Counsel's fee request is reasonable. *See In re Rite Aid*, 396 F.3d at 304-05 (approving multiplier of 4.07); *Varacallo v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 207, 256 (D.N.J. 2005) (approving multiplier of 2.83)

### b. The Requested Class Representative Incentive Payments Are Reasonable

The Settlement provides for incentive payments in the total amount of $97,000, with $15,000 to Henry Badia, Jose Munoz, Alvin Branch, Miguel Puca, Jaime Delcid, and Camillo Echavarria; $5,000 to Walter Velazquez; and $2,000 to George Rodriguez. "Courts have ample authority to award incentive or 'service' payments to particular class members where the individual provided a benefit to the class or incurred risks during the course of litigation." *Bredbenner v. Liberty Travel, Inc.*, No. 09-1248, 2011 U.S. Dist. LEXIS 38663, at *64-65 (D.N.J. Apr. 8, 2011) (collecting cases). *See also, Mirakay v. Dakota Growers Pasta Co.*, No. 13-4429, 2014 WL 5358987, at *15 (D.N.J. Oct. 20, 2014). Here, the named Plaintiffs assisted with the investigation into Defendants' business practices, participated in discovery, contacted other Class Members, and aided in the gathering of evidence. *See* ECF Nos. 51, 67-69. The Court therefore concludes that the incentive payments are reasonable.

### c. Conclusion

For the forgoing reasons, the Court finds the requested attorneys' fees and incentive payments to be reasonable. Therefore, Plaintiffs' motion for fees and awards is granted.

---

[7] The Court finds that the hours spent on the litigation and the billing rates for each attorney are reasonable.

**III.**    **CONCLUSION**

For the reasons stated above, the Settlement is **APPROVED** and Plaintiffs' motion for attorneys' fees is **GRANTED**.  An appropriate Order follows.

/s/ William J. Martini

**WILLIAM J. MARTINI, U.S.D.J.**

**Date: September 25, 2015**